MONTGOMERY v. WHITFIELD et al.

No. 6208.

United States Court of Appeals
Fourth Circuit.

Argued April 11, 1951.

Decided April 30, 1951.

Ashby Allen and Wilbur C. Allen, Richmond, Va. (Geo. E. Allen and Allen, Allen, Allen & Allen, all of Richmond, Va., on brief), for appellant.

H. Armistead Boyd, Richmond, Va. and B. S. Royster, Jr., Oxford, N. C. (Jack N. Herod and Bowles, Anderson & Boyd, all of Richmond, Va., and Royster & Royster, Oxford, N. C., on brief), for appellees.

Before PARKER, Chief Judge and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

A truck-trailer, loaded with lumber, collided with the rear end of a passenger automobile, and the wife of the driver of the automobile, seated beside him, was injured. This action was brought by her against the driver of the truck and certain persons alleged to be the owners of the vehicle. A verdict in favor of the latter was directed by the District Judge on the ground that the evidence clearly showed that they had no title to the truck or control over it at the time of the accident, and the case was submitted to the jury to determine whether the accident was caused by the negligence of one or both of the drivers, and whether negligence on the part of the plaintiff contributed thereto. The jury found a verdict for the defendant driver of the truck and the plaintiff appealed, complaining of errors in the instructions of the court.

The accident occurred shortly after midnight on August 12, 1948 as the vehicles were proceeding westerly on a two lane public highway about 22 feet wide, two miles west of Clarksville, Virginia, in the immediate vicinity of an accident which had occurred shortly before. The scene of the earlier accident was about 700 feet westerly from the brow of a hill which the truck and the automobile had just ascended. A few moments before reaching the summit of the hill the automobile overtook and passed the truck and then descended the hill on its right hand side of the road, the truck following at a distance of about 60 feet. The road was clear for a long distance in front of them, but to the right of the paved surface were situated a farm tractor pulling an automobile out of a ditch, a police car from Clarksville, and the car of a state trooper with a blinking red light which was visible to the occupants of the approaching vehicles. They also observed signals from a flashlight in the hands of a policeman who was standing near the other vehicles at the edge of the road.

When the oncoming automobile reached a point 400 feet from the policeman, it diverged to the left and slowed down, so that as it passed the policeman, it was to the left of the center line of the road. At this point it was overtaken and struck by the truck, both vehicles continuing for about 200 feet before they came to a stop. No one was injured except the plaintiff who suffered a severe sprain of the neck and lumbar spine.

Three different explanations of the accident find support in the evidence: (1), that J. S. Montgomery, the husband of the plaintiff and driver of the automobile, having good reason to know that the truck which he had passed near the top of the hill had also swerved to the left and was following close behind, checked the speed of his car so suddenly and unexpectedly that A. J. Newcomb, the truck driver, could not avoid the collision; (2), that Newcomb, without keeping a careful lookout, followed the automobile down the hill more closely than was reasonable and prudent, and negligently drove his truck into the back of the automobile when the latter slowed down in response to the policeman's signal; and (3), the testimony of the policeman,

with the flashlight, that he signalled the cars to pass by but Montgomery apparently misunderstood the signal and put on his brakes and pulled to the left just as the truck attempted to pass him on the left, and that if Montgomery had not taken this action there would have been ample room for the truck to pass by in safety. There was also evidence that Newcomb blew the horn of the truck before the collision occurred.

In view of this testimony, it would have been error if the District Judge had granted the instruction requested by the plaintiff that Newcomb was guilty of negligence which was the proximate cause of the collision. Furthermore, it was incumbent upon the District Judge, contrary to the plaintiff's contention, to instruct the jury under the Virginia law as to the duty of the driver of an overtaking automobile to keep a careful lookout and drive in such a manner as not to endanger life or property, and to give warning before passing a vehicle proceeding in the same direction; and also to describe the duty of the driver of an automobile to drive on the right side of a highway if it is practicable to do so and to give way to an overtaking vehicle which is proceeding at a lawful rate of speed and has given a suitable passing signal. In addition there was sound basis for the instruction that, in determining whether Newcomb acted with reasonable care, the jury were entitled to consider whether, without fault on his part, he was confronted with a sudden emergency and whether he acted as an ordinarily prudent man would have done under the same or similar circumstances. See, Southern Passenger Motor Lines v. Burks, 187 Va. 53, 60, 46 S.E.2d 26; Restatement of Torts, Vol. 2, § 296.

A closer question is raised by the contention that the judge should not have submitted to the jury the issue of contributory negligence on the part of the plaintiff since there was no evidence to support it. It is well settled in Virginia that the negligence of the driver of a vehicle cannot ordinarily be imputed to a guest and cannot be invoked as a defense by a joint tort feasor whose negligence contributed to the injury of the guest. Ransone v. Pankey, 189 Va. 200, 52 S.E.2d 97. Hence Mrs. Montgomery is entitled to recover in this case even if her injury was due partly to the negligence of her husband and partly to the negligence of the truck driver, unless negligence on her part was also a contributing factor; and the jury were so instructed. The verdict for the defendant, however, was general and it may have been based on the finding that the defendant was entirely free from blame or that negligence on the plaintiff's part contributed to the collision.

The law of Virginia on this subject is plain. Ordinarily a passenger in an automobile has no duty to direct a driver of a car since the driver is in control, and the guest should not interfere unless it becomes plain that his confidence is misplaced and that the driver is unaware of the dangers or is not taking precautions to avoid it; Mize v. Gardner Motor Co., 166 Va. 415, 419, 186 S.E. 108; Remine and Meade v. Whited, 180 Va. 1, 8, 21 S.E.2d 743; Murray v. Smithson, 187 Va. 759, 48 S.E.2d 239; Steele v. Crocker, 191 Va. 873, 62 S.E.2d 850; but when a passenger has observed a dangerous situation of which the driver is apparently unconscious, it is his duty to call it to the attention of the driver, and if he fails to do so, he is guilty of negligence. Norfolk & W. Ry. Co. v. Wellon's Adm'r, 155 Va. 218, 154 S.E. 575; Linton v. Virginia Electric & Power Co., 162 Va. 711, 174 S.E. 667. And it is also held that where the driver and the guest are equally aware of the surrounding circumstances and of impending danger, and the guest makes no protest or complaint as to the speed and operation of the car, his inaction amounts to contributory negligence which bars recovery for damages caused by the driver's wrongdoing. Sutton v. Bland, 166 Va. 132, 184 S.E. 231; Butler v. Darden, 189 Va. 459, 465, 53 S.E.2d 146.

The evidence clearly shows that Mrs. Montgomery, seated beside her husband, was as fully aware as he that their car was being closely followed by the

truck-trailer. She had noticed it and spoken of it to her husband when they passed it just before they reached the top of the last hill and swung around in front of it on the right side of the road. The glare of its lights as it followed at a distance of 60 feet must have shown into the car and have been visible to its occupants as the two vehicles swept down the incline. Indeed Mrs. Montgomery testified that when the automobile pulled to the left and slowed down she became conscious of the light and noise of the overtaking truck and turned around completely in her seat and was in this position when the blow was struck a moment later. Yet at no time did she object to the operation of the car. On the contrary she voiced the opinion at the trial that the slowing down and swerving to the right was the natural reaction of the driver to the situation confronting him. Under these circumstances we find no error in the submission of the issue of contributory negligence to the jury. It is obvious that the jury reached the opinion that the automobile was carelessly driven, and they may have accepted the policeman's testimony that the collision occurred because the automobile was driven to the left as the truck was attempting to pass it; and they could have found that the plaintiff was guilty of negligence when she failed to object to this dangerous maneuver.

In view of the verdict for the defendant Newcomb, the directed verdict for the defendants W. W. Whitfield and William A. Parrish on the ground that they did not own or control the truck-trailer at the time of the accident is of little importance since they were not personally involved in the accident. In any event, the directed verdict on their behalf is not open to serious question. It is true that the lumber on the truck had been sold by a copartnership consisting of W. W. Whitfield and William A. Parrish, and was being transported for delivery to their customer; and also that on August 12, 1948, the date of the accident, the certificate of title to the truck-trailer stood in the name of W. W. Whitfield, subject to a lien of the General Motors Acceptance Corporation. But the evidence is uncontradicted and convincing that on April 20, 1948, W. W. Whitfield's interest in the car was sold to his cousin, Ben Duke Whitfield, and that the Acceptance Corporation, which held possession of the certificate of title, assented to the transfer and substituted Ben Duke Whitfield for W. W. Whitfield on their books, and thereafter collected installment payments from the former. The evidence is also uncontradicted that Ben Duke Whitfield was not a member or an agent or an employee of the firm, and that he was hauling the lumber for the firm under contract at $10 per thousand feet, and that he employed and paid Newcomb to drive the truck for him.

The judgment of the District Court is Affirmed.